IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 07-00255-01-CR-W-ODS |
| | ) | |
| SERGIO IBARRA-SILVA, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION TO DENY
DEFENDANT'S MOTION TO SUPPRESS INFORMATION
LEARNED FROM THE TRAFFIC STOP OF AUGUST 3, 2006**

Before the court is Defendant's Motion to Suppress on grounds that the traffic stop, through which Defendant's identity was learned, was conducted in violation of the Fourth Amendment. Defendant claims that the undercover drug task force did not know his name or of his alleged involvement in the drug conspiracy until after the August 3, 2006, traffic stop and thus seeks to suppress evidence of the stop.

### *I. BACKGROUND*

On August 3, 2006, Grandview, Missouri, Police Officer Barry Huwar received a call from an undercover task force officer. The undercover officer told Officer Huwar that, if reasonable suspicion or probable cause existed, they wanted him conduct a traffic stop on a Cadillac Escalade with Texas plates that was pulling a red car on top of a trailer. Officer Huwar observed the Escalade described by the undercover officer and noticed that the car was not properly secured atop the trailer. Office Huwar stopped the Escalade and placed Defendant under arrest for failing to have a valid

1

driver's license and proof of insurance. Subsequent to Defendant's arrest, police searched the Escalade; no contraband was found.

An indictment was returned on July 19, 2007, charging Defendant with one count of conspiracy to distribute methamphetamine, cocaine base, cocaine, and marijuana; one count of aiding and abetting the distribution on methamphetamine; and one count of illegal entry into the United States after having been previously deported. On October 22, 2007, Defendant filed a motion to suppress information obtained from the traffic stop of August 3, 2006 (Doc. No. 41). The government responded to Defendant's motion on October 29, 2007 (Doc. No. 42). I conducted an evidentiary hearing on November 5, 2007. The government appeared by Assistant United States Attorney Charles Ambrose. Defendant was present, represented by appointed counsel Darren Fulcher. The government called Grandview, Missouri Detective Barry Huwar[1] to testify. I took judicial notice of Missouri Statutes Sections 307.010[2] and 301.130[3] (Tr. at 30). The following exhibits were marked and admitted into evidence:

---

[1] On August 3, 2006, Barry Huwar was a patrol officer with the Grandview, Missouri Police Department. Since that time, he has become a detective (Tr. at 3).

[2] Section 307.010 provides:
1. All motor vehicles, and every trailer and semitrailer operating upon the public highways of this state and carrying goods or material or farm products which may reasonably be expected to become dislodged and fall from the vehicle, trailer, or semitrailer as a result of wind pressure or air pressure and/or by the movement of the vehicle, trailer or semitrailer shall have a protective cover or be sufficiently secured so that no portion of such goods or material can become dislodged and fall from the vehicle, trailer or semitrailer while being transported or carried.
Mo. Rev. Stat. § 307.010(1).

[3] Section 301.130 provides, in relevant part:
5. No motor vehicle or trailer shall be operated on any highway of this state unless it shall have displayed thereon the license plate or set of license plates issued by the director of revenue or the state highways and transportation commission and authorized by section 301.140. Each such plate shall be securely fastened to the motor vehicle or trailer in a manner so that all parts thereof shall be plainly visible and reasonably clean so that the reflective qualities thereof are not impaired. . . .
Mo. Rev. Stat. § 301.130(5).

| | |
|---|---|
| Government's Exhibit 1: | 08/03/06 Police Report; |
| Defendant's Exhibit 5: | Photograph of Trailer; |
| Defendant's Exhibit 7: | Photograph of Cargo Strap; |
| Defendant's Exhibit 11: | Tow Report from Lazer Tow; |
| Court's Exhibit 1: | Missouri Revised Statute § 307.010; |
| Court's Exhibit 2: | Missouri Revised Statute § 301.130. |

At the conclusion of the hearing, I directed the government to provide Defendant a copy of the police tow report (Tr. at 42). Defendant informed me on December 3, 2007, that he wished to offer the report into evidence. As a result, the police tow report was marked and admitted into evidence as Defendant's Exhibit 12 (Doc. No. 56).

## *II. EVIDENCE*

On the basis of the evidence presented at the suppression hearing, I submit the following findings of fact:

1. On August 3, 2006, Grandview, Missouri Police Officer Barry Huwar received a call on his cell phone from an undercover task force officer (Tr. at 3-4). The undercover officer told Officer Huwar that, if reasonable suspicion or probable cause existed, they would like him to stop a 2004 Cadillac Escalade bearing Texas plates, 38 LTS, that was pulling a trailer with a red car on top of the trailer (Tr. at 4, 13-14, 21, 30; Gvt. Exh. 1).

2. As Officer Huwar received the call from the undercover officer, he observed the described Escalade pass his patrol car (Tr. at 5). Officer Huwar then followed the Escalade and began looking for probable cause to conduct a traffic stop (Tr. at 5).

3

If he had not been advised to look for the vehicle, Officer Huwar would not have paid attention to the Escalade (Tr. at 26-27).

3. Officer Huwar noticed that the red car on top of the trailer the Escalade was pulling was not properly secured (Tr. at 5, 16; Gvt. Exh. 1). At the time Officer Huwar observed the Escalade, it was traveling on a city street where the speed limit was 25 miles per hour (Tr. at 19). The car on the trailer was bouncing up and down (Tr. at 41). Officer Huwar testified at the suppression hearing that it was possible for the car to stay in place on the trailer unsecured while the Escalade was moving at least 25 miles per hour (Tr. at 20).

4. There were at least two cargo straps used secure the car to the trailer -- one on the front and one in the rear (Tr. at 40). One of the cargo straps was not attached on the driver's side (Tr. at 6, 40). The unattached strap was a long, yellow belt that was loose on one end and had a hook on the other end (Tr. at 35; Def. Exh. 7). The end of the strap with the hook was attached to the trailer on the passenger side, went underneath the car, and then dangled from and was unsecured on the driver's side of the trailer (Tr. at 6-7, 18, 37, 39-40).

5. During the suppression hearing, Officer Huwar used Defendant's Exhibit 5 to illustrate the location on the trailer to which the cargo strap's hook should have been affixed (Tr. at 37-38; Def. Exh. 5).

6. Upon observing the car on the trailer, Officer Huwar stopped the Escalade for failure to secure the load (Tr. at 7, 11). He believed that by stopping the Escalade, he

4

prevented a hazard (Tr. at 20-21). Over the course of his career as a traffic officer, Officer Huwar has stopped other vehicles for having unsecured loads (Tr. at 7).

7.  Officer Huwar then approached the Escalade and asked the driver for a driver's license and proof of financial responsibility (Tr. at 7). The driver did not have this paperwork but presented Officer Huwar with a Mexican driver's license (Tr. at 7, 32). The driver was ultimately identified as Defendant (Tr. at 7-8).

8.  Officer Huwar issued Defendant tickets and placed him under arrest for operating a motor vehicle without a valid driver's license and for not having any proof of insurance (Tr. at 8, 27; Gvt. Exh. 1). He did not ticket Defendant for having an unsecured load (Tr. at 28).

9.  Officer Huwar searched Defendant and the Escalade incident to Defendant's arrest (Tr. at 27, 31). A K-9 unit also sniffed the exterior of the Escalade (Tr. at 27, 31-32). No contraband was found (Tr. at 27-28, 44).

10. Officer Huwar prepared a written report following Defendant's arrest (Tr. at 5, 12; Gvt. Exh. 1). He did not state in the report that the cargo straps were defective, broken, severed, or loose fitting (Tr. at 21; Gvt. Exh. 1). He did not note that the cargo straps were dangling, hanging on the side of the car or trailer, or unfastened (Tr. at 21-22; Gvt. Exh. 1). Officer Huwar did not test the cargo straps (Tr. at 22).

11. Officer Huwar testified that had he not observed a traffic violation while following the Escalade, he would not have performed the stop (Tr. at 8, 26).

12. Lazer Tow towed the Escalade from the scene with the car on top of the trailer (Tr. at 22, 26). Before doing so, however, the tow truck driver properly secured the cargo strap to the trailer and the car (Tr. at 22).

### III. LEGAL ANALYSIS

Defendant challenges the constitutionality of the August 3, 2006, traffic stop. Specifically, he contends Office Huwar lacked probable cause to perform the stop and only did so to enable him to learn Defendant's identify and search the Escalade. Defendant argues the proper remedy for this alleged pretextual search is suppression of all information obtained from the stop, including his identity. This argument fails for two reasons.

"Pretextual traffic stops are a violation of the Fourth Amendment." United States v. Eldridge, 984 F.2d 943, 947-48 (8th Cir. 1993). When a law enforcement officer observes a traffic violation, however minor, he or she has probable cause for a traffic stop. Id. (citing United States v. Cummins, 920 F.2d 498, 500 (8th Cir. 1990)); see also United States v. Thomas, 93 F.3d 479, 485 (8th Cir. 1996). "Probable cause exists where an officer objectively has a reasonable basis for believing the driver has breached a traffic law." Thomas, 93 F.3d at 485 (citing Cummins, 920 F.2d at 501). An "otherwise valid stop does not become unreasonable merely because the officer has intuitive suspicions that the occupants of the car are engaged in some sort of criminal activity." Cummins, 920 F.2d at 501. That is, "the stop remains valid even if the officer would have ignored the traffic violation but for his other suspicions." Id.

In this case, Officer Huwar had probable cause to perform the traffic stop. Missouri Revised Statute Section 370.010 requires materials carried and/or transported on a trailer to be "sufficiently secured" so that such materials do not become dislodged and fall from the trailer. When Officer

6

Huwar observed the Escalade that had been described to him by the undercover task force officer, he noticed that the car on top of the trailer the Escalade was pulling was not properly secured. More specifically, one of the cargo straps used to secure the car was not attached to the driver's side of the trailer and the car was bouncing up and down. Officer Huwar thought he was preventing a hazard by stopping the Escalade. Based on this evidence, I find that Officer Huwar objectively had a reasonable basis for believing a traffic violation had occurred. Officer Huwar's testimony that he would not have paid attention to the Escalade but for the call from the undercover task force officer does not affect the validity of the stop. Defendant's motion to suppress should, therefore, be denied.

Moreover, the remedy Defendant requests -- suppression of his identity -- lacks a legal basis. United States v. Crews, 445 U.S. 463, 474 (1980)("An illegal arrest, without more, has never been viewed as a bar to subsequent prosecution, nor as a defense to a valid conviction."); INS v. Lopez-Mendoza, et al., 468 U.S. 1032, 1039-40 (1984)("The 'body' or identity of a defendant or respondent in a criminal or civil proceeding is never itself suppressible as a fruit of an unlawful arrest, even if it is conceded that an unlawful arrest, search, or interrogation occurred."); United States v. Rodriguez-Arreola, 270 F.3d 611, 618 (8th Cir. 2001)(stating, "The language in Lopez-Mendoza should only be interpreted to mean that a defendant may be brought before a court on a civil or criminal matter even if the arrest as unlawful"). Here, Defendant seeks only to suppress his identity. He does not challenge admission of any evidence obtained as a result of the August 3, 2006, traffic stop (Tr. at 43-44). Defendant's motion to suppress should be denied on this ground.

For the above-stated reasons, it is

RECOMMENDED that the court, after making an independent review of the record and the applicable law, enter an order denying Defendant's Motion to Suppress Information Obtained From the Traffic Stop of August 3, 2006.

Counsel are advised that, pursuant to 28 U.S.C. § 636(b)(1), each has ten days from the date of this report and recommendation to file and serve specific objections to the same, unless an extension of time for good cause is obtained. Failure to file and serve timely specific objections may result in waiver of the right to appeal factual findings made in the report and recommendation which are accepted or adopted by the district judge except upon the ground of plain error or manifest injustice.

*/s/ Robert E. Larsen*
ROBERT E. LARSEN
United States Magistrate Judge

Kansas City, Missouri
December 4, 2007